Michael DUNN, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–98–00237–CR.

Court of Appeals of Texas, Texarkana.

Argued Jan. 13, 2000.

Decided Jan. 25, 2000.

Vernard Solomon, Marshall, for appellant.

Todd E. Fitts, Asst. Dist. Atty., Marshall, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## O P I N I O N

Opinion by Justice ROSS.

Michael Dunn appeals from his conviction by a jury for injury to a child, a felony of the first degree. He was sentenced to thirty years' imprisonment. Dunn contends that the evidence is insufficient to support the finding that he intentionally or knowingly caused serious bodily injury to the child. He also contends that the trial court erred by excluding his evidence concerning his own knowledge, and knowledge by the public in general, about the physical danger inherent in the act of shaking a child.

Dunn focuses his legal and factual insufficiency argument upon *mens rea.* He argues that he simply did not know, and should not have been automatically aware, that shaking his baby could kill her. Although his brief does not specify whether he is attacking the legal or factual sufficiency of the evidence, his counsel announced at oral argument that he is attacking both. Therefore, we will address both aspects.

In our review of the legal sufficiency of the evidence, we employ the standards set forth in *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560, 573 (1979), and *Geesa v. State,* 820 S.W.2d 154 (Tex.Crim.App.1991), and look to see whether, after viewing all of the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In our review, we must evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible. *Dewberry v. State,* 4 S.W.3d 735, 736 (Tex.Crim.App. 1999).

In our review of the factual sufficiency of the evidence, we view all the evidence and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Jones v. State,* 944 S.W.2d 642, 647 (Tex.Crim.App.1996); *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996). Examples of such a wrong and unjust verdict include instances in which the jury finding is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *Clewis,* 922 S.W.2d at 135. If we find factual insufficiency, we vacate the conviction and remand for a new trial. *Jones,* 944 S.W.2d at 648; *Clewis,* 922 S.W.2d at 133–35.

Conflicts in the evidence are to be resolved by the jury. In doing so, it may accept one version of facts and reject another or reject any of a witness' testimony. *Penagraph v. State,* 623 S.W.2d 341, 343 (Tex.Crim.App. [Panel Op.] 1981). It is the jury's job to judge the credibility of the witnesses and the weight to be given their testimony, and it may resolve or reconcile conflicts in the testimony, accepting or rejecting such portions thereof as it sees fit. *Banks v. State,* 510 S.W.2d 592, 595 (Tex.Crim.App.1974).

When evidence both supports and conflicts with the verdict, we must assume that the fact finder resolved the conflict in

favor of the verdict. *Turro v. State*, 867 S.W.2d 43, 47 (Tex.Crim.App.1993).

█ Michael Dunn was the father of the eighteen-month-old child victim in this case. He testified that he shook the child while disciplining her and that the child went limp. In his written statement to the police, which was before the jury, Dunn admitted shaking the child and "slamming" her to the floor. At a suppression hearing, and again at trial, he vehemently denied "slamming" the child to the floor, and denied that he had made any such statement to the officers.

On the date of the occurrence, the child was taken to LSU Medical Center, where invasive brain surgery was performed in an effort to reduce pressure within her brain. She nevertheless died as a result of her injuries. The pathologist who performed the autopsy testified that he found exterior damage in the form of a hematoma on the right side of the child's head that was caused by a "significant blow." He also testified that he found a very recent skull fracture on the left occipital area of the skull. He further testified that the treating physicians had removed a hematoma within the brain and that he also saw a significant hemorrhage within the brain that would have been typically caused by either physically striking or violent shaking of the infant.[1] In his written statement to the police, Dunn admitted "slamming" the child to the floor and to shaking the child. The evidence is legally and factually sufficient to support a finding that Dunn committed the acts that resulted in serious bodily injury to the child.

The more specific question involves the issue of whether the evidence was legally and factually sufficient to permit a jury to conclude that he had the *mens rea* or intent necessary to commit the offense for which he was charged. The jury found Dunn guilty of intentionally or knowingly causing serious bodily injury to a child. TEX. PEN.CODE ANN. § 22.04(a),(e) (Vernon Supp.2000).

█ Injury to a child is a "specific result" offense. This means that it requires a culpable mental state which relates not to the nature of the circumstances surrounding the charged conduct, but to the result of the conduct. *Banks v. State*, 819 S.W.2d 676, 678 (Tex.App.-San Antonio 1991, pet. ref'd); *Haggins v. State*, 785 S.W.2d 827, 828 (Tex.Crim.App.1990). Result-oriented offenses require specific mental culpability beyond intentional conduct. *Schultz v. State*, 923 S.W.2d 1, 4 (Tex.Crim.App.1996). An actor is said to act with intent with respect to the result of his conduct when it is his conscious objective or desire to cause the result. *Dues v. State*, 634 S.W.2d 304, 305 (Tex.Crim.App. [Panel Op.] 1982).

█ In such a prosecution, the State is required to put on some evidence that the accused either acted with intent to cause serious bodily injury to the child or knew that his actions were reasonably certain to cause that result. *Withers v. State*, 994 S.W.2d 742, 746 (Tex.App.-Corpus Christi 1999, no pet.). Proof of a culpable mental state is often made by circumstantial evidence. *See Gardner v. State*, 736 S.W.2d 179, 182 (Tex.App.-Dallas 1987), *aff'd*, 780 S.W.2d 259 (Tex.Crim.App.1989). Proof of knowledge[2] is an inference that may be drawn by the fact finder both from direct evidence and from evidence of the circumstances surrounding the act. *Dillon v. State*, 574 S.W.2d 92, 94–95 (Tex.Crim.App. [Panel Op.] 1978); *Cantu v. State*, 944 S.W.2d 669, 670 (Tex.App.-Corpus Christi 1997, pet. ref'd). A jury can infer knowledge or intent from

---

1. Injury to a child's brain that is caused by violent shaking of the child is known as "shaken baby syndrome."

2. The jury was instructed that a person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *See* TEX. PEN.CODE ANN. § 6.03(b) (Vernon 1994).

the acts, conduct, and remarks of the accused and from the surrounding circumstances. *Withers,* 994 S.W.2d at 746; *Ortiz v. State,* 930 S.W.2d 849, 852 (Tex. App.-Tyler 1996, no pet.); *Menchaca v. State,* 901 S.W.2d 640, 652 (Tex.App.-El Paso 1995, pet. ref'd).

 In this case, Dunn's mental state was shown circumstantially. No direct evidence was presented regarding his intent to cause serious bodily injury or his knowledge that serious bodily injury could result from his conduct. The evidence did show, however, that Dunn shook the eighteen-month-old child "four or five times" as a "disciplinary" measure and because he was "upset." His written statement also said that he "slammed" the baby to the floor—how hard, he did not know, because he was "upset." The pathologist demonstrated for the jury the type of shaking necessary to cause the level of observed damage to the child. In his opinion, the child was shaken in a manner that caused her head to whiplash forward and backward, which caused the internal hematoma and bleeding in her brain. It was his conclusion that the child died as a result of blunt force trauma to the head and "shaken baby syndrome."

We find these circumstances sufficient for the jury to reasonably infer that Dunn acted with intent to cause serious bodily injury to his eighteen-month-old daughter or that he knew his actions were reasonably certain to cause that result.

The evidence is both legally and factually sufficient to support the verdict.

Dunn next contends that the court erred by refusing to admit evidence about the extent of his knowledge, and knowledge of the public in general, about the possible consequences of shaking an infant. His contention focuses on the refusal of the court to admit testimony from Danieta Sampson, the head of the local department for the Texas Department of Protective and Regulatory Services.

Her expected testimony, as reflected in a bill of exception, was that she had only within the last few months been to a seminar on "shaken baby syndrome" and that she had previously provided a videotape on the subject to the Women, Infants, and Children (WIC) program of the Texas Department of Health in some counties to show new parents. She also stated that her department had since received some material on the subject, and that she did not know if the parenting classes provided by the department discussed the dangers of shaking a baby. She did not provide testimony about the time when such knowledge became generally available concerning the level of injury that could be caused by shaking a baby in such a fashion.

 The court found the information not relevant. We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *See Green v. State,* 934 S.W.2d 92, 101–02 (Tex.Crim.App.1996); *Montgomery v. State,* 810 S.W.2d 372, 379–80 (Tex. Crim.App.1990). We will not reverse a trial court whose ruling was within the "zone of reasonable disagreement." *Green,* 934 S.W.2d at 102; *Montgomery,* 810 S.W.2d at 391 (opinion on reh'g).

 Based on the evidence that Dunn shook his eighteen-month-old child hard enough to cause brain damage, and "slammed" her to the floor with sufficient force to cause blunt force trauma to her head, we do not find the trial court's conclusion that Dunn's proposed evidence was not relevant to be outside the "zone of reasonable disagreement." Accordingly, we do not find an abuse of discretion, and error has not been shown.

The judgment is affirmed.