

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-15-00127-CR

THIEN QUOC NGUYEN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 19th District Court
McLennan County, Texas
Trial Court No. 2012-2444-C1

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Burgess

O P I N I O N

On October 24, 2012, in McLennan County,[1] Texas, Thien Quoc Nguyen drove his car in front of a motorcycle driven by Michael Willett and slammed on his brakes, forcing Willett to crash the motorcycle and causing Willett to sustain serious injury. Nguyen was indicted for aggravated assault with a deadly weapon and was subsequently convicted of that crime by a McLennan County jury. After pleading true to enhancement and habitual-offender allegations, Nguyen was sentenced to forty-seven years' imprisonment.

On appeal, Nguyen argues that (1) the evidence was legally insufficient to support his conviction; (2) the State violated his right to a speedy trial; (3) the indictment failed to properly allege reckless conduct; (4) the trial court erroneously submitted the State's deadly-weapon theory and the options of knowing and intentional mental states to the jury; (5) the trial court erred by not submitting to the jury a lesser-included offense instruction of simple assault; (6) the trial court's instructions and submission to the jury contained a misleading theory of the case and improperly commented on the evidence; (7) five prospective jurors were improperly dismissed; and (8) the trial court improperly limited his cross-examination of Willett.

We find that (1) sufficient evidence supports Nguyen's conviction; (2) Nguyen failed to preserve any complaint that the State violated his right to a speedy trial; (3) Nguyen waived any complaint that the trial court erred in submitting recklessness to the jury based on the State's failure

---

[1] Originally appealed to the Tenth Court of Appeals in Waco, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Tenth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

to properly allege reckless conduct; (4) the trial court did not err in submitting the State's deadly-weapon theory or its intentional and knowing mental-state allegations; (5) Nguyen was not entitled to a lesser-included offense instruction of reckless driving; (6) Nguyen failed to preserve the complaints that the jury charge contained a misleading theory and that the trial court made improper comments; (7) dismissing the veniremembers was within the trial court's discretion; and (8) the trial court's error in limiting Nguyen's cross-examination of Willett was harmless. Accordingly, we affirm the trial court's judgment.

## I.     Factual Background

Willett testified that, on October 24, 2012, he was riding his motorcycle at about sixty miles per hour when a black Mercedes sedan, driven by Nguyen, pulled beside him and repeatedly accelerated and decelerated. Willett testified, "[Nguyen] was trying to race me . . . and then he got behind me to ride my bumper." Willett went on to say, "[Nguyen got] so close behind me that, you know, I felt, you know, in danger, so I -- you know, I was aggravated at that point, so I did give him the finger, and then I proceeded to accelerate to get away."

Subsequently, Willett slowed down as he approached an intersection and a nearby gas station. When he did, Nguyen caught up to him, passed him, pulled into Willett's lane of travel just a "few feet" ahead of him and "jammed on the brakes." Willett "laid the bike down" to avoid colliding with Nguyen's car, and he and the motorcycle slid for about 150 feet. Willett and his motorcycle came to a stop "right before . . . or right after the intersection," near the entrance to a nearby convenience store and gas station. Despite the slide, Willett did not believe his motorcycle

3

struck Nguyen's car. Willett testified he saw Nguyen drive away from the scene, but that he returned before the police arrived.

As a result of the incident, the motorcycle was damaged and was leaking fluids. Willett ended up four or five feet away from the motorcycle, suffered bruising and cuts to his knee, "road rash," and scarring on his hip. As a result of his injuries, he was transported to a local hospital. Willett testified that he could walk immediately after the accident, but that he could no longer do so about thirty or forty minutes after he arrived at the hospital. For the next three weeks, Willett could only walk with the aid of crutches. At the time of trial, he still felt occasional pain from his injuries.

Aldora Bradford testified that the incident happened "well before" the intersection of Lake Shore Drive and Gholson Road. She remembered initially seeing the motorcycle next to her in the left lane and Nguyen's Mercedes behind the motorcycle. Bradford testified that, at one point, the black sedan was "behind [her] trying to run [her] over" in order to "get to the motorcycle." She testified that Nguyen sped up and then slowed down, trying to race the motorcycle, "like he was playing a game." She believed that Nguyen's driving was dangerous to her and everyone else on the road. When asked to describe Nguyen's driving, she said, "I don't know if he was having a road rage moment or what, because he was trying to make me get out of the way and driving on the shoulder and about to hit me from behind."

Bradford testified that the Mercedes passed her and pulled into the right lane ahead of her next to the motorcycle. Nguyen then pulled ahead of the motorcycle and cut in front of it.

4

According to Bradford, it looked "like he tried to -- he hit him." After the incident, Nguyen "tried to leave" and continued to drive further down Gholson, but the driver of a van made him pull over.

The two men in the van were identified as David Attaway and his brother, Boots Attaway. Both men testified at trial. David testified that they were traveling in the right lane, approaching the intersection of Lake Shore Drive and Gholson Road, when David noticed a motorcycle quickly approaching them from behind. David changed into the left lane to allow the motorcycle to continue; however, Nguyen suddenly cut him off, forcing him onto the median. He saw Nguyen pull in front of the motorcycle and hit his brakes, forcing the motorcyclist to "lay it down." He knew that Nguyen "hit [the brakes] hard, because the nose of that car dropped." Boots' testimony corroborated David's and Bradford's testimony.

After the accident, David let his brother out of the van so he could check on the motorcyclist. David called 9-1-1 and followed Nguyen's Mercedes. Nguyen later stopped, got out of the vehicle, and walked back to David's van, saying, "What happened? I didn't do anything," but then Nguyen got back in his car and continued to drive away. He eventually pulled into the gas station's parking lot.

James Evans, an accident reconstructionist, testified for the defense. Evans personally visited, measured, and photographed the accident scene and reviewed the police incident report, the written statements the witnesses gave to the police, as well as the photographs of the damaged vehicles. He also viewed photographs depicting a puddle of fluid left on the road and gouges and scrape marks left on the pavement. Based on that information, he produced several drawings depicting the various ways the accident could have occurred. Evans testified that his "initial

5

thought was that [Nguyen] was pulling into a driveway or [was] turning in the right turn lane or something of that nature" at the time of the accident. Evans could not exclude the possibility that Nguyen was slowing down to make the turn at the intersection. However, on cross-examination, he admitted that, based on the physical evidence, he could not discern which of the possible scenarios actually occurred. Specifically, he testified that he could not determine "if the car braked hard and caused something or if he swerved hard and caused something or did a lane change or if the car wasn't really involved at all and the motorcycle wasn't paying attention and braked."

## II.      Analysis of the Issues

### A.      The Evidence Supporting Nguyen's Conviction Was Legally Sufficient

In his first point of error, Nguyen argues that there is legally insufficient evidence that he intentionally, knowingly, or recklessly assaulted Willett using his car as a deadly weapon.

#### 1.      Standard of Review

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*,

6

214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*. In order to convict Nguyen, the evidence had to be sufficient to show that Nguyen intentionally, knowingly, or recklessly caused bodily injury to Willett by driving recklessly, causing Willett to crash his motorcycle, and that Nguyen used his car as a deadly weapon during the commission of the assault. *See* TEX. PENAL CODE ANN. § 22.01(a)(1) (West Supp. 2016), § 22.02(a)(2) (West 2011). Nguyen contends that the evidence is insufficient to find (a) that he acted intentionally, knowingly, or recklessly or (b) that he used his vehicle as a deadly weapon.[2] We disagree.

**2. Application**

**a. Sufficient Evidence Supports the Jury's Findings that Nguyen Intentionally, Knowingly, or Recklessly Assaulted Willett**

"A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." TEX. PENAL CODE ANN. § 6.03(a) (West 2011). "Proof of a culpable mental state is

---

[2]Because Nguyen only challenges two elements of the charged offense, we need not examine the remaining elements.

7

often made by circumstantial evidence." *Louis v. State*, 329 S.W.3d 260, 268 (Tex. App.—Texarkana 2010), *aff'd*, 393 S.W.3d 246 (Tex. Crim. App. 2012) (citing *Dunn v. State*, 13 S.W.3d 95, 98–99 (Tex. App.—Texarkana 2000, no pet.)). A culpable mental state may be inferred "from any facts which tend to prove its existence, including the acts, words, conduct of the accused, and the method of committing the crime." *Id*. (citing *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002)).

Willett testified that, prior to the accident, Nguyen was trying to race him and was riding his bumper. According to Bradford, Nguyen sped up to Willett and then slowed down. She testified that Nguyen tried to run over her in his attempts to get to the motorcycle. Willett testified that he gave Nguyen the middle finger and sped away, but that Nguyen eventually passed him, pulled into his lane just a few feet ahead of him, and "jammed on the brakes," forcing him to crash the motorcycle. David and Boots testified that Nguyen hit his brakes so hard that the nose of his car dropped sharply. While Evans testified that it was possible that Willett failed to keep a proper lookout or that Nguyen was slowing down in order to turn at the intersection, he also admitted that he could not definitively say that that is what happened. Bradford testified that the accident happened well before the intersection, so the jury could have inferred that Nguyen was not slowing down in order to turn. Moreover, Willett, Bradford, David, and Boots testified that Nguyen intentionally pulled in front of Willett's motorcycle and slammed on his brakes.[3]

---

[3]Nguyen does not contend that the trial court erred in admitting the witnesses' lay opinion testimony regarding his mental state, and, therefore, the evidence may be considered in evaluating whether sufficient evidence supports the jury's verdict. *See Fairow v. State*, 943 S.W.2d 895, 898–99 (Tex. Crim. App. 1997) (lay opinion of culpable mental state may be admissible if proponent establishes personal knowledge of facts from which the opinion may be drawn); *see also Patrick v. State*, 906 S.W.2d 481, 488 (Tex. Crim. App. 1995) (intent can be inferred from words or actions).

The jury was the sole fact-finder and had the sole responsibility to weigh the evidence. As such, the jury was free to believe the testimony of the State's witnesses and dismiss Evans' conflicting theories. *See Jackson*, 443 U.S. at 319. Viewing the evidence in the light most favorable to the jury's verdict, a rational jury could have reasonably inferred that it was Nguyen's "conscious objective or desire to" cause Willett's injury by driving recklessly. *See* TEX. PENAL CODE ANN. § 6.03(a); *Louis*, 329 S.W.3d at 268. Finally, because the evidence is sufficient to prove that Nguyen acted intentionally, it is necessarily sufficient to prove the lesser culpable mental states of knowing and reckless. *See* TEX. PENAL CODE ANN. § 6.02(e) (West 2011); *McKinney v. State*, 12 S.W.3d 580, 583–84 (Tex. App.—Texarkana 2000, pet. ref'd). Therefore, the evidence is sufficient to support the jury's verdict.

### b. Sufficient Evidence Supports the Jury's Finding that Nguyen's Vehicle Was A Deadly Weapon

A deadly weapon is defined in the Texas Penal Code as a firearm or "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(A), (B) (West Supp. 2016). Items that are not deadly weapons per se may be deemed deadly weapons by reason of their use or intended use. *Hill v. State*, 913 S.W.2d 581, 582–83 (Tex. Crim. App. 1996). A motor vehicle may be a deadly weapon where "the vehicle was intentionally, recklessly or negligently used as a weapon by the accused." *English v. State*, 828 S.W.2d 33, 38 (Tex. App.—Tyler 1991, pet. ref'd). A deadly-weapon finding is justified if a rational jury could have concluded that the defendant's vehicle posed an actual danger of death or serious bodily injury. *Sierra v. State*, 280 S.W.3d 250, 254, 256–57 (Tex. Crim. App. 2009).

Here, Willett and Boots testified that the manner in which Nguyen used his vehicle that day could have caused serious bodily injury or death. *See* Tex. Penal Code Ann. § 1.07(a)(17)(A), (B); *Hill*, 913 S.W.2d at 582–83; *English*, 828 S.W.2d at 38. As a result of the crash, Willett suffered bruising, cuts, road rash, and scarring, and for three weeks after the accident, he was unable to walk without the aid of crutches. There was testimony that Nguyen tried to race Willett and that, while trying to pass Willett, he almost ran over Bradford's vehicle and forced David's van onto the median. Several witnesses testified that, after passing Willett, Nguyen intentionally got in front of him and slammed on his brakes. That evidence, coupled with Willett's injuries from the crash, sufficiently supports the jury's determination that the manner in which Nguyen used his vehicle posed an actual danger of death or serious bodily injury. *See* Tex. Penal Code Ann. § 1.07(a)(17)(A), (B); *Sierra*, 280 S.W.3d at 254, 256–57; *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000) (specific intent to use vehicle as deadly weapon not required). Because there is sufficient evidence to support the jury's verdict and deadly-weapon finding, we overrule this point of error.

**B.      Nguyen Failed to Preserve Error Regarding his Right to a Speedy Trial**

In his second point of error, Nguyen contends that the State violated his Sixth Amendment right to a speedy trial. He argues that he "had been incarcerated since October 24, 2012[,] and he requested a speedy trial on July 22, 2014, [but] trial did not commence until June 9, 2015."

**1.      Standard of Review**

The Sixth Amendment to the United States Constitution provides, in relevant part, that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. Const.

10

amend. VI; *Barker v. Wingo*, 407 U.S. 514, 515 (1972). That right was made applicable to the states by the Due Process Clause of the Fourteenth Amendment. U.S. CONST. amend. XIV; *see Klopfer v. N. Carolina*, 386 U.S. 213, 223–26 (1967). The Texas Constitution likewise provides that, "[i]n all criminal prosecutions the accused shall have a speedy . . . trial." TEX. CONST. art. 1, § 10. The Texas Court of Criminal Appeals has traditionally analyzed state constitutional claims of the denial of a speedy trial under the factors articulated in *Barker*. *See Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002).

The right to a speedy trial is subject to a balancing test to determine whether the right has been abridged. *Barker*, 407 U.S. at 530. The court should inquire about (1) the length of the delay, (2) reasons for the delay, (3) the circumstances of the defendant's assertion of the right, and (4) any prejudice that resulted from the delay. *Id*. When reviewing a trial court's decision on a speedy trial claim, an appellate court applies a bifurcated standard of review. *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999); *State v. Jones*, 168 S.W.3d 339, 345 (Tex. App.—Dallas 2005, pet. ref'd). "[W]e review legal issues *de novo*[,] but give deference to a trial court's resolution of factual issues." *Kelly v. State*, 163 S.W.3d 722, 726 (Tex. Crim. App. 2005); *Munoz*, 991 S.W.2d at 821; *Jones*, 168 S.W.3d at 345. We review a speedy trial claim in light of the arguments, information, and evidence that was available to the trial court at the time it ruled. *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003); *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003); *Jones*, 168 S.W.3d at 345.

## 2.     Application

Here, Nguyen filed a motion for speedy trial and a request for priority setting, but he failed to seek a ruling on his motion. Because the trial court was not given the opportunity to consider the *Barker* factors, there is no evidentiary record from which this Court could apply, analyze, and balance those factors. *See Grimaldo v. State*, 130 S.W.3d 450, 454 (Tex. App.—Corpus Christi 2004, no pet.); *Wade v. State*, 83 S.W.3d 835 (Tex. App.—Texarkana 2002, no pet.); *Dean v. State*, 995 S.W.2d 846, 850 (Tex. App.—Waco 1999, pet. ref'd). Therefore, Nguyen failed to preserve this issue for our review. *See Dean*, 995 S.W.2d at 850.

## C.     Nguyen Waived Any Error Regarding the Allegation of Reckless Conduct

In his third point of error, Nguyen argues that the indictment failed to sufficiently allege specific reckless conduct by him and, therefore, that the trial court erred in submitting that theory of assault to the jury. Nguyen failed to preserve this point at trial.

The indictment alleges that by "driving recklessly," Nguyen "intentionally, knowingly, or recklessly" injured Willett by causing him to crash his motorcycle. Nguyen contends that, by alleging that he acted recklessly, the State was required to allege in the indictment "the act or acts relied upon to constitute recklessness" and that, because the State failed to do so, "the indictment could not support or authorize a verdict or judgment based on reckless conduct."[4] Therefore,

---

[4]Article 21.15 of the Code of Criminal Procedure provides,
> Whenever recklessness . . . enters into or is a part or element of any offense, or it is charged that the accused acted recklessly . . . in the commission of an offense, the complaint, information, or indictment in order to be sufficient in any such case must allege, with reasonable certainty, the act or acts relied upon to constitute recklessness . . ., and in no event shall it be sufficient to allege merely that the accused, in committing the offense, acted recklessly . . . .

TEX. CODE CRIM. PROC. ANN. art. 21.15 (West 2009).

12

Nguyen concludes, the trial court erred in submitting aggravated assault with a deadly weapon to the jury based on recklessness.

Despite Nguyen's attempt to couch this as a jury charge error, it is apparent from his argument that he "challenges his conviction on the basis of a defective charging instrument" as "recklessness was not properly alleged . . . in the manner mandated by Article 21.15." Nguyen was required to assert any objection "to any defect, error, or irregularity of form or substance in [the] indictment" before trial. TEX. CODE CRIM. PROC. ANN. art. 1.14(b) (West 2005). By failing to do so, Nguyen waived any complaint that the indictment failed to allege recklessness as required by Article 21.15. *See id*. Therefore, Nguyen also waived any complaint that the indictment was insufficient to support the trial court's submission of recklessness to the jury. *See id*.; *Rodriguez v. State*, 799 S.W.2d 301, 303 (Tex. Crim. App. 1990); *Studer v. State*, 799 S.W.2d 263, 273 (Tex. Crim. App. 1990).

**D.** **The Issues of Whether Nguyen Acted Intentionally or Knowingly and Whether He Used a Deadly Weapon Were Properly Submitted to the Jury**

**1.** **Introduction and Standard of Review**

In his fourth point of error, Nguyen contends that the trial court erred in submitting aggravated assault to the jury based on intentional or knowing conduct because the indictment alleges that Nguyen "did then and there intentionally, knowingly, or recklessly cause bodily injury to MICHAEL JACOB WILLETT *by driving recklessly* causing MICHAEL JACOB WILLETT to crash his motorcycle." (Emphasis added). Nguyen argues that by drafting the indictment in this way, the State limited itself to proving aggravated assault with a deadly weapon by recklessness only.

13

Similarly, Nguyen alleges that the trial court erred in submitting the statutory definition of deadly weapon because it allowed the jury to find that his vehicle was "capable of causing death or serious bodily injury" in its "intended use," and one cannot recklessly intend to use an object. Consequently, he alleges that, by submitting aggravated assault based on intentional or knowing conduct, and by submitting the deadly-weapon allegation to the jury in this case, the trial court impermissibly expanded the scope of the indictment to allow conviction for offenses not alleged in the indictment.

When reviewing claimed charge error, we first determine whether charge error occurred. *Sakil v. State*, 287 S.W.3d 23, 25 (Tex. Crim. App. 2009). If no error occurred, a harm analysis is not required. *Id*. at 26.

> **2.    The Trial Court Did Not Err in Submitting Aggravated Assault with a Deadly Weapon By Intentional or Knowing Conduct in the Jury Charge**

As noted, Nguyen alleges that the State was limited to establishing this offense by recklessness due to the way it drafted the indictment. Therefore, he concludes, the trial court erred in submitting the theories of intentional and knowing conduct to the jury. Essentially, he alleges that, by allowing the jury to convict him of intentional or knowing aggravated assault with a deadly weapon, the trial court impermissibly expanded the scope of the indictment to allow for conviction of offenses not alleged in the State's indictment. Yet, even if we assume that the State limited

itself to proof of aggravated assault with a deadly weapon by reckless conduct, the trial court did not err in submitting the intentional and knowing alternatives to the jury.[5]

In *Reed v. State*, the Court of Criminal Appeals addressed the mirror image of the facts in this case. *Reed v. State*, 117 S.W.3d 260 (Tex. Crim. App. 2003). In *Reed*, "[t]he indictment charged appellant only with intentionally and knowingly causing bodily injury to another and using or exhibiting a deadly weapon during the assault," but the charge allowed the jury to convict appellant if it found that he "intentionally, knowingly, or recklessly caused the bodily injury." *Id.* at 264, 261. The Court of Criminal Appeals held that the trial court erred because it "improperly broadened the indictment by including 'recklessly' in the jury instructions when the indictment alleged 'intentionally' and 'knowingly.'" *Id.* at 262, 265. Although the facts in *Reed* are distinguishable from the present case, the reasoning in that case leads us to conclude that the trial court did not err in this case.

By allowing a jury to convict for aggravated assault with a deadly weapon based on reckless conduct, when only intentional or knowing conduct is alleged in the indictment, a trial court allows the jury to convict on less proof than that required by the indictment. Thus, when the trial court included the lower mental state in the charge in *Reed*, it impermissibly broadened the indictment. Yet, as we noted previously, "[p]roof of a higher degree of culpability than that charged constitutes proof of the culpability charged." TEX. PENAL CODE ANN. § 6.02(e);

---

[5]Contrary to Nguyen's argument, it could also be argued that the term "by driving recklessly" was merely the manner and means by which Nguyen "did then and there intentionally, knowingly, or recklessly cause bodily injury to MICHAEL JACOB WILLETT" and not an additional mental-state allegation that eliminated its ability to convict him for intentional or knowing aggravated assault. However, because we decide against Nguyen on other grounds, we need not decide this issue. Rather, we will assume, without deciding, that the State was limited to proving his guilt by recklessness only.

15

*McKinney*, 12 S.W.3d at 583–84.  Accordingly, even if we assume that the indictment in this case only alleged reckless conduct, whereas the charge allowed conviction for intentional, knowing, or reckless conduct, the trial court did not broaden the indictment because it did not allow the State to convict Nguyen on less proof than was required by the indictment.  Thus, while the specific holding in *Reed* does not address the fact situation in this case, the reasoning behind that holding supports the conclusion that the trial court did not err in submitting the intentional and knowing theories in the jury charge here.[6]

### 3. The Trial Court Did Not Err in Submitting the Statutory Definition of A Deadly Weapon in the Jury Charge

Nguyen next argues that, because the phrase "by driving recklessly" limited the State to proof of aggravated assault based on reckless conduct only, the trial court likewise erred in submitting the statutory definition of "deadly weapon" as "anything that in the manner of its use

---

[6]The Court of Criminal Appeals confirmed that the reason the charge in *Reed* was improper was because it allowed the State to convict based on a different mental state than that alleged in the indictment, not because it allowed conviction of a different offense than that alleged in the indictment:

> Although appellant was charged with intentionally and knowingly shooting Anita Gaitlin, the jury instructions allowed him to be convicted for recklessly disregarding the risk that one of the shots he fired at Robinson may have hit someone else.  Therefore, the jury instructions expanded the indictment.  It is possible that the jury found appellant guilty of recklessly causing the bodily injury, which is conduct that was not alleged in the indictment.
>
> We are not holding that appellant was charged with a different or separate offense than that which he was possibly convicted of, rather we are saying that either the indictment should have accurately listed the applicable mental states or the charge should have limited the jury instructions to the mental states alleged in the indictment.

*See Reed*, 117 S.W.3d at 265.

A conviction for aggravated assault with a deadly weapon is a second degree felony regardless of whether intentional, knowing, or reckless conduct is alleged and proved; thus, the jury charge did not allow for conviction of an offense not alleged in the indictment.  *See* TEX. PENAL CODE ANN. § 22.02(b) (West 2011).  Because the charge required more proof to convict for intentional and knowing conduct, there was no impermissible expansion of the indictment in this case even if we assume that the indictment only alleged recklessness.  We express no opinion on whether *Reed* would apply if a different degree of offense were created by proof of intentional or knowing conduct when only recklessness was alleged in the indictment.

16

or intended use is capable of causing death or serious bodily injury." *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(B). Instead, he argues, the trial court should have eliminated the language "or intended use" from the statutory definition given in the charge. Nevertheless, for the reasons stated previously, even if we assume that the State was limited to proving Nguyen's guilt by recklessness, the inclusion of intent did not broaden the scope of the indictment because it did not allow the jury to convict on less proof than that required to prove what the State alleged in the indictment. Accordingly, the trial court did not err in including the statutory definition of "deadly weapon" in the jury charge.

### E. Nguyen Was Not Entitled to an Instruction on the Lesser-Included Offense of Assault

#### 1. Standard of Review

In Nguyen's fifth point of error, he contends that the trial court erred by failing to submit a jury instruction for the lesser-included offense of simple assault causing bodily injury.

An offense is a lesser included offense if:

> (1)  it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;
> (2)  it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;
> (3)  it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or
> (4)  it consists of an attempt to commit the offense charged or an otherwise included offense.

TEX. CODE CRIM. PROC. ANN. art. 37.09(1), (4) (West 2006). Under this statute, an offense is a lesser-included offense of the charged offense

if the indictment for the greater-inclusive offense either: 1) alleges all of the elements of the lesser-included offense, or 2) alleges elements plus facts (including descriptive averments, such as non-statutory manner and means, that are alleged for purposes of providing notice) from which all of the elements of the lesser-included offense may be deduced.

*Ex parte Watson*, 306 S.W.3d 259, 273 (Tex. Crim. App. 2009) (op. on reh'g) (per curiam).

We apply a two-pronged analysis to determine whether an instruction on a lesser-included offense should be included in the jury charge. *State v. Meru*, 414 S.W.3d 159, 162 (Tex. Crim. App. 2013); *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012); *Hall v. State*, 225 S.W.3d 524, 535–36 (Tex. Crim. App. 2007). In the first prong, we compare the elements of the offense as charged in the indictment or information with the elements of the asserted lesser-included offense.[7] *Meru*, 414 S.W.3d at 162; *Hall*, 225 S.W.3d at 535–36. This first prong is a question of law and does not depend on evidence adduced at trial. *Hall*, 225 S.W.3d at 535.

The second prong requires that the record contain some affirmative evidence that would permit a jury rationally to find that, if a defendant is guilty, he is guilty only of the lesser-included offense. *See Schmidt v. State*, 278 S.W.3d 353, 362 (Tex. Crim. App. 2009). The evidence must establish the lesser-included offense as a valid rational alternative to the charged offense. *Wesbrook v. State*, 29 S.W.3d 103, 113–14 (Tex. Crim. App. 2000). Anything more than a scintilla of evidence is sufficient to entitle a defendant to an instruction on the lesser charge. *Ferrel v. State*, 55 S.W.3d 586, 589 (Tex. Crim. App. 2001). However, if a defendant either presents evidence that he committed no offense or presents no evidence and there is no affirmative evidence

[7]Under the cognate-pleadings approach, if the elements of the lesser-included offense can be deduced from facts alleged in the indictment, they need not be pled in the indictment. *Hall*, 225 S.W.3d at 535. We use the functional-equivalence concept to determine whether the elements of the lesser offense are "functionally the same or less than those required to prove the charged offense." *McKithan v. State*, 324 S.W.3d 582, 588 (Tex. Crim. App. 2010).

18

otherwise showing he is guilty only of a lesser-included offense, then a charge on a lesser-included offense is not required. *Bignall v. State*, 887 S.W.2d 21, 22–24 (Tex. Crim. App. 1994); *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex. Crim. App. 1985).

### 2. Application

Under the first prong of the review, we must determine whether simple assault is a lesser-included offense of aggravated assault with a deadly weapon. Aggravated assault requires proof that the defendant committed the offense of simple assault—intentionally, knowingly, or recklessly causing bodily injury to another—as well as proof of an aggravating factor, such as the use or exhibition of a deadly weapon. TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a)(2). We find, and the State concedes, that simple assault meets the first prong of the lesser-included offense test.

Under the second prong, we must determine if there is some affirmative evidence that would permit the jury to find that Nguyen was only guilty of simple assault. Here, the indictment alleged that, by "driving recklessly," Nguyen "intentionally, knowingly, or recklessly" injured Willett by causing him to crash his motorcycle and that he used his car as a deadly weapon in the course of committing the assault. In order to be entitled to an instruction on simple assault, there must have been evidence that the car was "not capable of causing death or serious bodily injury" in the way Nguyen used it or intended to use it in this case. TEX. PENAL CODE ANN. § 1.07(a)(17)(B). In other words, there must have been affirmative evidence by which the jury could conclude that Nguyen's driving caused Willett to crash his motorcycle, but that the manner in which Nguyen drove the car was not capable of inflicting serious bodily injury or death. *See*

19

TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a)(2); *Schmidt*, 278 S.W.3d at 362. There is no such affirmative evidence in the record.

Although Evans testified to several possible scenarios to explain what happened and how Nguyen and Willett could have been driving, he also admitted that he was unable to discern which of the possible scenarios actually happened and which did not. Therefore, his testimony was mere speculation. *See Cavazos v. State*, 382 S.W.3d 377, 385 (Tex. 2012) (speculation insufficient to meet threshold for lesser-included offense). Moreover, none of the testimony by the State's witnesses could support a reasonable inference that Nguyen's car was not used as a deadly weapon, and even if the jury were to disbelieve their testimony, that alone would not have entitled Nguyen to a lesser-offense instruction. *See Schmidt*, 278 S.W.3d at 362. Accordingly, Nguyen was not entitled to an instruction on simple assault. We overrule this point of error.

### F. Nguyen Failed to Preserve Error Regarding a Misleading Theory and the Trial Court's Comment on the Evidence

The jury charge instructed the jury that the elements of the charged offense were:

1. On or about the 24th day of October, 2012;
2. in Mclennan County, Texas;
3. THIEN QUOC NGUYEN;
4. did then and there intentionally, knowingly or recklessly;
5. cause bodily injury to MICHAEL JACOB WILLETT;
6. by driving recklessly causing MICHAEL JACOB WILLETT to crash his motorcycle;
7. and the Defendant did then and there use or exhibit a deadly weapon, to-wit: an automobile, during the commission of said assault.

In his sixth point of error, Nguyen argues that the trial court improperly commented on the weight of the evidence by submitting the sixth element: "by driving recklessly causing MICHAEL JACOB WILLETT to crash his motorcycle." He argues that the challenged language "effectively

20

linked the so-called motorcycle crash to [Nguyen] even though the evidence showed the 'crash' was exclusively the result of [Willett's] decision to lay down his motorcycle." Nguyen then cites to cases holding that (1) "[a] suggestion in a jury charge that certain evidence is true or untrue is a comment on the weight of the evidence," *see Russell v. State*, 749 S.W.2d 77, 78 (Tex. Crim. App. 1988); (2) a trial court impermissibly comments on the State's case when it assumes the truth of a fact that must be proved by the State, *see Marlow v. State*, 537 S.W.2d 8, 9 (Tex. Crim. App. 1976); and (3) "[t]he jury charge must not 'improperly focus the jury on the type of evidence that would support a finding' sought by the State," *see Kirsch v. State,* 357 S.W.3d 645, 652 (Tex. Crim. App. 2012).

Nguyen's brief does not clearly describe the nature of his complaint regarding the charge. On the one hand, his argument could be interpreted as a singular complaint that the charge language is a comment on the weight of the evidence *because* the indictment did not sufficiently allege the sixth element of the offense. On the other hand, his argument could be interpreted as a two-fold complaint (1) that the quoted language should not have been in the charge because the indictment did not sufficiently allege the sixth element *and* (2) that, even if the indictment were sufficient to allege that element, the language used is a comment on the weight of the evidence. When resolving a claim of jury charge error, we apply the two-part analysis detailed in *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984). Yet, regardless of how Nguyen's argument is read, the first step of the *Almanza* analysis requires us to determine whether there was an error in the charge, and the trial court's charge language in this case was not erroneous.

21

"A trial judge improperly comments on the weight of the evidence if he makes a statement that (1) implies approval of the State's argument; (2) indicates any disbelief in the defense position; or (3) diminishes the credibility of the defense's approach to the case." *Joung Youn Kim v. State*, 331 S.W.3d 156, 160 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (plurality op.) (citing *Clark v. State*, 878 S.W.2d 224, 226 (Tex. App.—Dallas 1994, no pet.)). If we read Nguyen's argument as making a singular complaint, the argument is meritless because the indictment clearly alleged that element. If we consider it as a two-fold complaint, the argument likewise fails because the charge language was not presented as a demonstrative statement from the court to the jury.

The problem with Nguyen's argument is that it misconstrues the nature of the charge language. The charge language was not presented to the jury as an affirmative statement of fact, but as an element that the jury had to find proven beyond a reasonable doubt in order to find Nguyen guilty. In other words, rather than assuming that Nguyen caused Willett to crash his motorcycle, the charge language instructed the jury that, in order to find Nguyen guilty, they had to find that the State proved, beyond a reasonable doubt, that Nguyen caused Willett to crash his motorcycle. Accordingly, the charge language did not "(1) impl[y] approval of the State's argument; (2) indicat[e] any disbelief in the defense position; or (3) diminish the credibility of the defense's approach to the case." *Joung Youn Kim*, 331 S.W.3d at 160. Therefore, the charge language was not an impermissible comment on the weight of the evidence.

We overrule this point of error.

**G.      The Trial Court Did Not Err in Dismissing Five Potential Jurors for Cause**

In his seventh point of error, Nguyen contends that the trial court improperly granted the

State's challenge for cause of five veniremembers.[8]

**1.      Introduction**

Before trial, the State performed criminal history background checks on the potential

jurors.  During voir dire, the State asked the panel, "[H]ave you, a family member, or a close friend

ever been arrested for anything more than a traffic ticket[?]"   After completing its voir dire

questioning, the State challenged at least five of the veniremembers for cause on the basis that they

had failed to disclose they had previously been arrested.  The State argued that these jurors, by

failing to disclose that they had been arrested in the past, were not giving truthful answers to the

voir dire questions.[9]  Nguyen objected to the challenges, arguing that failure to disclose a prior

arrest is not one of the grounds for cause listed in Article 35.16 of the Code of Criminal Procedure.

The trial court agreed with the State and dismissed the challenged veniremembers.

On appeal, Nguyen argues that the trial court applied the wrong legal standard in sustaining

the State's challenges because failure to disclose a prior arrest is not one of the grounds for cause

listed in Article 35.16 of the Code of Criminal Procedure.  We disagree.

**2.      Standard of Review**

To show error in the trial court's grant of the State's challenges for cause, Nguyen must

demonstrate that either (1) the trial court applied the wrong legal standard in sustaining the

---

[8]Nguyen does not specify the juror numbers to whom his challenge pertains.

[9]The State argued, "[I]f he's not telling us the truth when the question is asked, 'What have you been -- have you, a close family member, or close friend been arrested,' if he's sitting there silently, he is not telling us the truth."

challenges or (2) the trial court abused its discretion in applying the correct legal standard. *Jones v. State*, 982 S.W.2d 386, 388 (Tex. Crim. App. 1998). If the trial court applied the correct legal standard, "[w]e examine the record as a whole to determine whether there is support for the trial court's decision, and, in doing so, we give great deference to the trial court." *Penry v. State*, 903 S.W.2d 715, 728 (Tex. Crim. App. 1995) (per curiam) (citing *Satterwhite v. State*, 858 S.W.2d 412, 415 (Tex. Crim. App. 1993) (per curiam)). We accord the trial court such deference because only the trial court is able to consider such factors as demeanor and tone of voice that are not apparent when reviewing the appellate record. *Penry*, 903 S.W.2d at 728 (citing *Mooney v. State*, 817 S.W.2d 693, 701 (Tex. Crim. App. 1991)); *see also Howard v. State*, 941 S.W.2d 102, 115 (Tex. Crim. App. 1996), *overruled on other grounds by Easley v. State*, 424 S.W.3d 535 (Tex. Crim. App. 2014) (stating that trial court "is in a unique position to measure the venireperson's sincerity, comprehension[,] and demeanor").

### 3.     Application

"A challenge for cause can be properly asserted on grounds which are not specifically enumerated in Article 35.16, V.A.C.C.P., where such a challenge is based on facts that show that the prospective juror would be 'incapable or unfit to serve on the jury,'" *Mason v. State*, 905 S.W.2d 570, 577 (Tex. Crim. App. 1995), or refuses to follow the statutory scheme and truthfully answer the questions propounded to him. *See Wainwright v. Witt*, 469 U.S. 412, 422 (1985); *Allridge v. State*, 850 S.W.2d 471, 484 (Tex. Crim. App. 1991) (venireman preoccupied with business); *Nichols v. State*, 754 S.W.2d 185, 193 (Tex. Crim. App. 1988), *overruled on other grounds by Harris v. State*, 784 S.W.2d 5, 19 (Tex. Crim. App. 1989) (venireman preoccupied

24

with personal problems). Also, challenges not based upon enumerated statutory grounds are ordinarily addressed to the sound discretion of the trial judge. *Mason*, 905 S.W.2d at 577; *Allridge*, 850 S.W.2d at 484–85; *Nichols*, 754 S.W.2d at 193.

Here, the five challenged veniremembers failed to truthfully answer questions regarding a veniremember's, family member's, or close friend's previous arrest experiences. It is not unreasonable to believe that someone who has been arrested might be sympathetic to the plight of someone else who has been arrested. Accordingly, the State's questions in this case were proper because they were designed to determine the existence of a potential challenge for cause based on a "bias or prejudice in favor of or against the defendant." *See* TEX. CODE CRIM. PROC. ANN. art. 35.16(a)(9) (West 2006). Likewise, it is not unreasonable to conclude that a veniremember who refuses to truthfully answer such proper questions will also refuse to follow the law and the instructions of the trial court during the trial. Accordingly, the trial court was well within its discretion to sustain the State's challenges for cause and dismiss the jurors. *See* TEX. CODE CRIM. PROC. ANN. art. 35.02 (West 2006); *Wainwright*, 469 U.S. at 422; *Allridge*, 850 S.W.2d at 484–85; *Nichols*, 754 S.W.2d at 193–94. We overrule this point of error.

**H.      Limiting Nguyen's Cross-Examination of Willett Was Harmless Error**

In his final point of error, Nguyen contends that the trial court improperly limited his cross-examination of Willett by prohibiting questions regarding the pending civil lawsuit filed by Willett against Nguyen.

Trial courts have discretion in admitting or excluding evidence during a trial. On appeal, we review a trial court's decision to limit cross-examination for an abuse of discretion. *See Sansom*

25

*v. State*, 292 S.W.3d 112, 118 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). The scope of cross-examination in Texas is broad and extends to facts that may affect the witness' credibility. *See Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996); *see also* TEX. R. EVID. 611(b). A defendant is entitled to pursue all avenues of cross-examination reasonably calculated to expose a motive, bias, or interest for the witness to testify. *Carroll*, 916 S.W.2d at 497. However, the scope of appropriate cross-examination is not unlimited, and the trial court generally has "wide discretion in limiting the scope and extent of cross-examination." *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009); *Carroll*, 916 S.W.2d at 497–98. For example, a trial court may properly limit the scope of cross-examination to prevent harassment, prejudice, confusion of the issues, harm to the witness, and repetitive or marginally relevant interrogation. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *Carroll*, 916 S.W.2d at 498.

The fact that a witness has filed a civil suit against a defendant arising from the same incident for which the defendant is on trial is generally admissible as tending to show interest and/or bias on the part of the witness. *See Cox v. State*, 523 S.W.2d 695, 700 (Tex. Crim. App. 1975). Under certain circumstances, evidence of the complainant's civil suit against a third party may also be relevant to show bias. *See Shelby v. State*, 819 S.W.2d 544, 545 (Tex. Crim. App. 1991) (holding trial court erred by refusing to allow cross-examination regarding civil suit); *Furgison v. State*, 800 S.W.2d 587, 589–91 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd) (holding same). The relevance of such evidence is derived from its impeachment value to show motive to give false testimony based on a witness' desire to recover damages or other relief. *See Palermo v. State*, 992 S.W.2d 691, 698 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd).

26

During Nguyen's cross-examination of Willett, he asked, "Now, we've got this proceeding going on. There is also a lawsuit involving this, is there not?" Willett answered, "Correct." A discussion occurred at the bench, wherein the State objected, arguing that the pending civil suit Willett filed against Nguyen regarding his injuries from this incident was irrelevant. Nguyen made an offer of proof, questioning Willett outside the presence of the jury:

> Q. (BY [COUNSEL FOR NGUYEN]) Mr. Willett, I think the last question I asked you was, there is a pending lawsuit on this matter. Correct?
>
> A. Correct.
>
> Q. Okay. You have filed a lawsuit seeking recovery of damages against Mr. Nguyen as a result of this. Is that right?
>
> A. Correct.
>
> Q. I think you had insurance on your motorcycle at the time, did you not?
>
> A. I did.
>
> Q. Okay. But is it fair -- I mean, your coverage did not include any kind of damage to you or your bike. Is that right?
>
> A. Correct.
>
> Q. I think you actually called your insurance company at some point to make the claim, and you were told that you didn't have coverage for that. Is that right?
>
> A. Correct.
>
> Q. Okay. When was the lawsuit filed? Do you know?
>
> A. I don't recall.
>
> Q. And who is the lawyer you have?

27

A.    John Lewis.

. . . .

Q.    (BY [COUNSEL FOR NGUYEN]) So that's not something -- I mean, your insurance company didn't file suit to try to collect damages. You actually went and talked to Mr. Lewis and got a lawyer and filed a lawsuit. Is that right?

A.    Correct.

The trial court sustained the State's objection and prevented any further questioning regarding the civil lawsuit.

Although Nguyen's question and Willett's answer established that "[t]here is a lawsuit involving this," it is not clear from this exchange that Willett had filed a civil suit against Nguyen and was asking the civil court to award him money damages for the injuries and property damages he sustained in the incident with Nguyen. Based on these facts, it could be argued that Willett had an economic motive to shade his testimony during the criminal trial against Nguyen. Moreover, such cross-examination would not have confused the issues or harmed or harassed Willett, was not repetitive, and was more than marginally relevant to show bias. Therefore, the trial court erred in prohibiting Nguyen from cross-examining Willett on the specific nature of the civil lawsuit and the fact that he was seeking monetary damages from Nguyen.[10]  *See Cox*, 523 S.W.2d at 700.

Having concluded that the trial court erred in this ruling, we must reverse the judgment unless we can determine beyond a reasonable doubt that the error did not contribute to the conviction. *See* TEX. R. APP. P. 44.2(a). When making such a determination, we must first assume

---

[10]Though properly excluded, Nguyen does not argue that the trial court erred in excluding Willett's insurance-related testimony.

28

that the damaging potential of the cross-examination was fully realized. *See Van Arsdall*, 475 U.S. at 684. With that assumption in mind, we review the entire record and consider the following factors: (1) the importance of the witness's testimony in the prosecution's case, (2) whether the testimony was cumulative, (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, (4) the extent of cross-examination otherwise permitted, and (5) the overall strength of the prosecution's case. *Id.* Finally, we then determine whether the error was harmless beyond a reasonable doubt. *Id.*

Here, Willett's testimony is very important to the State's case, as he was the alleged victim and the witness closest to Nguyen's car at the time of the crash. However, the State's case against Nguyen was very strong because Willett's testimony and recollection of the events was corroborated by the testimony of Bradford, David, and Boots. Nguyen was otherwise allowed a broad and extensive cross-examination of Willett. Based on an examination of the record in light of these factors, we find that the trial court's error was harmless beyond a reasonable doubt. Accordingly, we overrule this point of error and affirm the trial court's judgment.

## III. Conclusion

For the foregoing reasons, we affirm the trial court's judgment.

Ralph K. Burgess
Justice

Date Submitted: April 5, 2016
Date Decided: November 9, 2016

Publish

29